# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN E. TARPLEY, #307233 | * | |
| Petitioner | * | |
| v. | * | Civil Action No. GLR-13-863 |
| WARDEN BOBBY P. SHEARIN, et al. | * | |
| Respondents | * | |
| | *** | |

## MEMORANDUM

Respondents' Answer as supplemented seeks dismissal of the above-captioned Petition for Writ of Habeas Corpus without a hearing. ECF Nos. 7 & 13. Petitioner's claim is now ripe for review. The Court deems a hearing in this matter unnecessary. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2011); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

## Background

Petitioner Steven Tarpley ("Tarpley") was tried by a jury sitting in the Circuit Court for Harford County, Maryland on charges of possession of a destructive device, possession of controlled dangerous substances (cocaine and heroin), and possession of drug paraphernalia. The charges against Tarpley arose from events occurring on November 15, 2000. At approximately 1:20 a.m. State Police responded to a possible domestic disturbance call at 3448 Jarrettsville Pike in Monkton, Maryland. When officers arrived, the door to the apartment was slightly ajar and they could hear a woman screaming "get off of me, stop hurting me." When the

officers looked through the open door they saw Tarpley, sitting in a chair, restraining Andrea Yarosh. Tarpley released her when the officers entered the apartment.

Tarpley and Yarosh were separately interviewed, but after approximately 20 minutes of attempting to understand the nature of the disagreement one of the officers noticed two possible explosive devices in plain view, sitting on a table. The officers evacuated everyone from the building and arrested Tarpley, who later consented to a search of his apartment. The search uncovered vials containing a white powdery substance, gelcaps containing a white powder residue, rolling papers, and spoons with a powdery residue. When the authorities analyzed the vials they were found to contain mostly cocaine and trace amounts of heroin. Additionally, the residue on the spoons tested positive for heroin. ECF No. 7-4 at 2-3.

During trial, Deputy Fire Marshall Christopher Mark Van Baalen ("Van Baalen") provided expert testimony regarding the explosive devices. Specifically, Van Baalen identified the items on the table in Tarpley's apartment as $CO_2$ cartridges equipped with thin wires coming out of the tops. One of the cartridges had nails attached to it. The authorities used a robot to move the cartridges from Tarpley's apartment to a field across the street where a blasting cap with primer on it was placed near the cartridges in order to open them up to determine what was inside. Rather than simply separating, the devices detonated and Van Baalen collected the debris from the field with metal detectors. The debris collected included pieces of metal, nails, and a wire. ECF No. 7-2 at 6-7; ECF No. 7-4 at 3.

Van Baalen then interviewed Tarpley at the State Police Barracks after he was advised of his rights. Tarpley explained he had made the $CO_2$ devices four years prior to his arrest, kept them in a drawer, and removed the devices the night before because he was planning to destroy them on his way to work in the morning. Van Baalen testified that Tarpley described the devices

2

as containing 260 to 300 grains of black powder with an Estes rocket motor igniter. Van Baalen testified that the igniter would heat up through an electrical charge and would "initiate the powder," causing gasses to form. He further explained that as the gasses form and the powder continues to burn in a closed space, the item separates and an explosion occurs. ECF No. 7-4 at 3- 4.

A chemist from the United States Bureau of Alcohol, Tobacco and Firearms, Lisa Lang, testified regarding her examination of the items Van Baalen collected after the devices exploded. Lang verified that the residue inside of the cartridge was consistent with black powder residue and that the wires were consistent with an Estes Solar Model Rocket Igniter. ECF No. 7-4 at 7-8. On February 11, 2002, the jury found Tarpley guilty on all charges. He was sentenced to serve a term of 20 years incarceration on April 12, 2002.

<u>Threshold Considerations</u>

Exhaustion of State Remedies

Under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b), (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking certiorari to the Court of Appeals), and with other claims by way of a post-conviction petition, followed by seeking leave to appeal in the Court of Special Appeals. Petitioner waived all unexhausted claims raised in the Petition (<u>see</u> ECF No. 11); thus, the remaining possession of a destructive device claim may be reviewed on the merits.

Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011); Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 785 (internal quotation marks omitted).

4

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. at 379.

Analysis

Tarpley asserts the trial court improperly instructed the jury regarding the elements of possession of a destructive device. ECF No. 1 at 6. Specifically, Tarpley claims the trial court instructed the jury using pattern instruction 4:17, which addresses controlled dangerous substances offenses and is not applicable to the elements of possession of a destructive device. Id.

5

In rejecting Tarpley's claim, the Maryland Court of Special Appeals first noted that defense counsel asked the trial court for its understanding of the term "knowing" as it was used in the statute prohibiting the knowing possession of a destructive device. The trial court stated that the term meant that "he 'knew that what he had was a destructive device,' not that he 'knew that the possession of a destructive device was a violation of the law.'" ECF No. 7, Ex. 4 at 5. The trial court then instructed the jury in the following manner:

> The defendant is also charged with possession of a destructive device. On or after October 1 of 1997, a person may not knowingly possess, control, store or use a destructive device. A destructive device means explosive, incendiary or toxic material that has been combined with a delivery or detonating apparatus so as to be capable of inflicting injury to persons or damage to property.
>
> In order to convict the defendant of possession of a destructive device, the State must prove that the defendant knowingly had possession of same, which means that he had control over a thing, whether actual or indirect. In determining whether the defendant had possession of the object, you must consider again the surrounding circumstances, and the circumstances again include the distance between the defendant and the object, and whether the defendant had some ownership or possessory interest in the place where the object was found.
>
> "Knowingly" is generally defined as having knowledge. An act is done knowingly if done voluntarily and purposely, and not because of mistake, accident, inadvertence, or some other innocent reason.

Id. at 5-6. Tarpley's counsel objected to the instruction and argued that the term "knowing" meant knowledge that possession of the device was illegal; the trial court disagreed and did not change its instruction. Id. at 6. The Court of Appeals continued its analysis by interpreting the meaning of the Maryland statute[1] prohibiting possession of a destructive device. Id. at 6-7. In agreeing with the state's view that the term "knowing" refers to the person's knowledge of the

---

[1] Md. Code Ann., Crim. Law §4-503 reads in pertinent part:
A person may not knowingly:
(1) Manufacture, transport, possess, control, store, sell, distribute, or use a destructive device; or
(2) Possess any explosive, incendiary, or toxic material with intent to create a destructive device.

facts constituting the offense, as opposed to his knowledge that the conduct is illegal, the appellate court observed:

> '[T]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.' Melton v. State, 379 Md. 471, 476 (2004)(citations omitted). '[W]e view the words of the statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood.' Derry v. State, 358 Md. 325, 335 (2000). 'When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, no further research is required.' Dickerson v. State, 324 Md. 163, 171-172 (1991).
>
> The language and grammatical construction of the statute in question clearly indicate that it prohibits possessing what one knows to be a destructive device. In other words, the trial court explained, the State had to prove that appellant knew he possessed a destructive device. There is nothing in the statute that can be interpreted as requiring anyone to know that possession of the device is illegal.
>
> This construction is consistent with the purpose of the statute. Prior to the 1997 revision, possession of a destructive device was unlawful if it was possessed 'with the intent to terrorize, frighten, intimidate, threaten, or harass.' Md. Code (1957, 1996 Rev. Vol.), Article 27, §139B(a). The Committee to Revise Article 27 noted that the purpose of the revision of the 'explosives laws,' which eliminated the specific intent requirement but added the term 'knowingly,' was 'to consolidate the law on this subject and <u>to ensure that the creation of any device intended to cause damage to property or injury to persons by way of explosion, fire, or poison is covered by the law</u>.' (emphasis added).

ECF No. 7, Ex. 4 at 7-8.

The claim asserted by Tarpley does not implicate a federal or constitutional claim;[2] rather it involves a matter of state law. Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Given the sound reasoning of the state appellate court on the issue raised by Tarpley, it

---

[2] The claim, as exhausted, does not raise a constitutional issue.

is clear that a complete miscarriage of justice did not occur.  Thus, the Petition for Writ of Habeas Corpus must be denied.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not issue.  See 28 U.S.C. § 2253(c)(2).

April 9, 2014 /s/
_____
George L. Russell, III
United States District Judge